BARTON *v.* HARDIN.

Opinion delivered November 19, 1928.

*Dobbs & Young,* for appellant.

*H. P. Warner, H. T. Harrison* and *Abe Collins,* for appellee.

McHANEY, J.   On May 3, 1920, appellee purchased for himself and the appellee, J. R. Hooten, 600 acres of timber land on the Cossatat River, in Sevier County, from Tom Edwards and J. Thomas Penny. The consideration was $20,000, $4,000 of which was paid in cash and the remainder in eight notes of $2,000 each, secured by a mortgage on the land. The deal was made through one Frank Ogden, who was introduced to appellee Hardin by appellant, who was a close personal friend of Hardin,

and who recommended each to the other in the highest terms as being absolutely trustworthy and reliable. The notes not being paid at maturity, Edwards and Penny and G. P. Pride instituted this action in the Sevier Chancery Court to foreclose the mortgage to collect said notes, the complaint alleging that Penny and Edwards had conveyed one of the $2,000 notes to Ogden as a part of his commission in the sale of the real estate, who, in turn, had sold the note to Pride, and that Pride was a *"bona fide"* holder and owner of said note for value in due course of business.''

Appellees answered, and filed a cross-complaint, and, after the taking of much testimony, it developed that Pride claimed only one-half interest in said note, and that the other half was owned by Barton by virtue of a secret arrangement between Barton and Ogden, who had divided equally the $1,000 cash paid on commission, and were to divide the proceeds of the $2,000 note. At this time the plaintiffs, Penny, Edwards and Pride, agreed with Hardin on a compromise of the litigation, but the interest of appellant in said note was not compromised. Appellant thereupon filed an intervention, claiming to own one-half of said $2,000 note, to which appellees responded, alleging that Ogden had procured these notes through fraud, to which appellant was a party, and he was therefore not entitled to recover.

The court entered a decree canceling the note and denying appellant's right to recovery, as follows:

''The court is of the opinion that there was a collusion between the intervener, Barton, and Frank Ogden to put over this deal with the defendant G. C. Hardin, and that Hardin was deceived and misled by the intervener in his dealings with Ogden; that the land was not as represented, and that such facts were known to Ogden and Barton when made, and that the intervener is in no position to come into chancery court and ask for the relief sought; that his complaint should be dismissed for want of equity; that the said note be canceled, and the title to the land quieted as against any lien against the

land by reason thereof, and that the intervener, W. B. Barton, should pay all cost relating to said intervention.''

The principal attack made upon the decree by this appeal is that it was without sufficient allegations in the complaint, and that the proof thereof is insufficient to sustain a judgment for fraud. We cannot agree with counsel in this contention. We cannot undertake to review the testimony in detail, as it would unduly extend this opinion. It is the settled rule of this court, under decisions too numerous to mention, that the findings of fact made by a chancery court will not be disturbed on appeal unless they are against the clear preponderance of the evidence. Bearing this rule in mind, we find from the evidence that the appellee, Hardin, spoke to some of his friends in Fort Smith, who were timber people, including appellant, that he desired to locate a tract of high-grade land with a growth of high-class hardwood timber suitable for high-grade wagon stocks and handles, on river bottom land, above overflow, which would be suitable, after the removal of the timber, for a stock farm, and for the growth of alfalfa and other crops, and that he would expect to pay a good price therefor. Appellant volunteered to try to locate such a tract for him. Later, appellant brought a letter to Hardin from Ogden regarding this tract of land, and, still later, appellant brought Ogden to Hardin's office, placed one hand on Ogden's shoulder and one on Hardin's, stating that he was acting as a friend, and recommended Ogden to Hardin in the highest terms, stating that Ogden was a large landowner in Sevier County, a good judge of timber land, and a man of large means. Ogden stated that there was more than one million feet of first-class hickory and oak, more than one million feet of first-class gum, and other quantities of pine and cypress; that the land was not subject to overflow, except in some places, in exceedingly high water, it would overflow a few inches, but that for all practical purposes it was above overflow. Hardin requested Ogden to go and look at the land himself and

satisfy himself that it was the character of timber land that Hardin desired to purchase. The land was first priced to Hardin at $40 per acre, and later he reduced the price to $20,000 for the whole tract, stating that his principals were willing to do that in order to get established in that vicinity a stock farm of that character. It was made clear to Ogden that Hardin could not go to see the land himself, but was relying upon his representations. It later developed that these representations were false; that the amount of timber was greatly overestimated, there being only about 200,000 feet of hickory and oak and about a half million feet of gum, and very little pine or cypress. The land was subject to. overflow with almost every rise of the river, and wholly unadapted to the purposes for which Hardin had made. the purchase. Most of the testimony of Hardin was not denied by Ogden, and appellant did not take the stand.

Under this state of facts we are of the opinion that the chancellor was justified in entering the decree aforesaid. At least it cannot be said that it is against the preponderance of the evidence. It is suggested that Hardin sent Davidson to examine the land for him, but this is disputed by both Hardin and Davidson. Davidson went to look at the timber only, and on his own account, for the reason that he was purchasing or marketing the products of Hardin and Hooten, and desired to see the character of timber that was to produce the stock to be marketed by him. Appellant made no representations regarding the land, but, being a partner with Ogden, he will be held bound by the fraudulent representations of his partner, and will not be permitted to share the fruits of the fraud on any theory of estoppel or laches in failing to move to rescind sooner.

Appellees did not discover appellant's connection with the fraud until the trial of the case, and they thereupon immediately interposed the defense herein stated.

Moreover, appellant is not entitled, under the facts in this case, to invoke the aid of a court of equity, as he does not come with clean hands.

As said by this court in *O'Conner* v. *Patton,* 171 Ark. 626-638, 286 S. W. 822-826: "'He who comes into equity must come with clean hands,' or, as it is sometimes expressed, 'he that hath committed iniquity shall not have equity,' is one of the cardinal maxims of equity. Says Mr. Pomeroy: 'Whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principles, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' 1 Pomeroy Eq. Jur., § 397, and numerous cases cited in note."

Now, as we have already shown, appellant, acting as a friend of Hardin's, introduced Ogden to him in glowing terms as to his standing and honesty, thereby making it possible for Ogden to perpetrate the fraud in the sale of this land. Then on the trial of this case it developed that he was sharing in the fruits of the fraud, and came into a court of equity to enforce the collection thereof. He is therefore in no better position to enforce this demand than Ogden would have been.

We find no error, and the decree is affirmed.